IN THE UNITED STATES DISTRICT COURT FOR THE
NORTHERN DISTRICT OF FLORIDA
GAINESVILLE DIVISION


UNITED STATES OF AMERICA

v.                                                      CASE NO. 1:94-cr-01009-MP-AK

JOHN RICHARD KNOCK,

        Defendant.

_____/

## REPORT AND RECOMMENDATION

This matter is before the Court on Doc. 962, motion to vacate, Doc. 961, supplement to grounds stated in § 2255 motion, and Doc. 988, motion for permission to join grounds for relief raised by co-defendant, filed by John Richard Knock. He is represented by counsel. The Government has filed its response to the motions to vacate and for permission to join, Docs. 989 and 1001, and a notice of supplemental authority. Doc. 1020. Knock has filed a reply to the Government's § 2255 response. This cause is therefore in a posture for decision. Having carefully considered the matter, the Court recommends that the motion to vacate be denied.

## BACKGROUND

On March 10, 1994, John Richard Knock, Claude Louis Duboc,[1] and Roger Darmon[2] were indicted for drug and money laundering offenses. Doc. 2. In Count I, the Government

---

[1] Duboc pled guilty in 1994, and was sentenced to life imprisonment. Doc. 387.

[2] Darmon, a French citizen, was never apprehended and died in Corsica in 2001. Doc. 1022, Ex. The charges against him were dismissed on April 27, 2006. Doc. 1023

charged that "from a date unknown but at least by January 1, 1982, and continuing up to and including the date of this indictment, in the Northern District of Florida and elsewhere," the defendants conspired to possess with intent to distribute marijuana in violation of 21 U.S.C. § § 841 and 846.  In Count II, the Government charged that during this same time period and in the same locale, the defendants conspired to import marijuana into the United States "from a place outside thereof" in violation of 21 U.S.C. § § 952, 960, and 963.  *Id.*  In Count III, the Government reiterated the time period and location, charging the defendants with conspiracy to "transport funds from a place in the United States to a place outside the United States, which activity was to be conducted with the intent to promote carrying on of a specified unlawful activity," in violation of 18 U.S.C. § 1956.  *Id.*  Count IV sought the criminal forfeiture of illegally derived property.  *Id.*

Knock was arrested by French officials in Paris, France, on April 17, 1996.  Presentence Report for John Richard Knock at ¶ 35.  After a lengthy extradition process, he was returned to the United States in January, 1999.  *Id.*  On February 17, 1999, a Superseding Indictment was filed.  Doc. 414.  The Superseding Indictment added another defendant, Albert Thomas Madrid,[3] clarified the dates of the charges to "from a date unknown but at least by January 1, 1982, and continuing up to and including April 17, 1996," and specified the overt acts in the money laundering count, Count III.  *Id.*  Knock was represented by Michael Kennedy.

---

[3]Madrid was arrested on May 10, 1996 in Mexico on Canadian warrants.  Knock PSR at ¶ 36.  He was extradited to Canada, where he pled guilty to possession with intent to distribute hashish and was sentenced to six years imprisonment.  *Id.*  After serving four years, Canadian authorities turned him over to the United States.  *Id.*

In August, 1999, the Government moved to disqualify Mr. Kennedy from further representation of Mr. Knock.  Doc. 510.  According to the Government, Kennedy suffered "from conflicts in five different areas and...the cumulative effect of these actual or potential conflicts requires...disqualification": (1) and (2) Kennedy represented two alleged drug distributors, Jeffrey Kagel and David Kaplan, who received a "significant portion" of their drugs from the Knock/Duboc organization and were being investigated by a grand jury in New Jersey; (3) the District of New Jersey was "actively investigating money laundering allegations against Mr. Kennedy relating to his handling of drug proceeds"; (4) Kennedy's bank records indicated that he was representing Richard Buxton, a fugitive from the District of Colorado and  "another drug distributor for Knock/Duboc"; and (5) Kennedy represented Robert Singer in the Northern District of California after Singer was arrested "picking up a truck that contained a portion of the Knock/Duboc 1993 marijuana load into San Francisco."  *Id*.  The Government claimed that it learned about Kaplan from a letter that Knock's wife, Naomi, had written her husband while he was jailed in France in which she indicated that "Kennedy has not been honest with them...."  *Id*. It was the investigation into Mr. Kennedy's personal involvement, however, which was the "most troublesome" to the Government.  *Id*.

In response, Mr. Kennedy maintained (1) that he was not Kagel's lawyer, (2) that he was not authorized to act for Kaplan in any way, (3) that he was "mystified, chagrined, and ready to meet" the grand jury investigation into his own actions, (4) that, although Buxton was a client, he had not been charged in any jurisdiction and there was no reason to think he would be a witness in this case, and (5) that he only briefly represented Singer and "learned absolutely nothing" relevant to this case.  Doc. 517.  Mr. Kennedy explained that he considered Naomi

Knock to be a client whom he had counseled and that they had "no conflicts or contradictions in this matter." *Id.*

> After hearing, the Court denied the motion to disqualify, finding:

> As a preliminary matter...four of the six conflicts[4] can be easily waived by Defendant. First, Kaplan currently is not represented by Kennedy. Moreover, Kennedy's past legal representation of Kaplan appears to have been insignificant and unrelated to the instant case, and the Government has no plans to call Kaplan as a witness. Second, Kagel currently is not represented by Kennedy and has other counsel. Even though the Government has subpoenaed Kagel to testify at trial, it is unlikely he will actually testify. Kagel invoked his Fifth Amendment right when previously subpoenaed before a New Jersey grand jury, and there is no reason to think that Kagel will relinquish that right when appearing in this court. Third, Kennedy's past representation of Singer was extremely limited, and the Government does not intend to call Singer to testify. Fourth, although Kennedy does not presently represent Buxton, Buxton's whereabouts are unknown and the Government does not intend to call him as a witness. None of the aforementioned endanger Knock's right to a conflict-free counsel. Difficulties with these conflicts, if any, can be cured through a knowing, intelligent, and voluntary waiver made at a *Garcia* hearing, thereby precluding the need to disqualify Kennedy.

Doc. 529.

> As to the investigation into Kennedy personally, the Court found: "Although the Government has acted in good faith and has legitimate reasons for withholding information [regarding the on-going investigation], the Court is reluctant to disqualify Kennedy without more facts about Kennedy's wrongdoing." *Id.* The Court concluded that the fact that Kennedy was the subject of a grand jury investigation, as opposed to the target of investigation, was insufficient to demonstrate an actual conflict of interest. *Id.* As to Ms. Knock, the Court held: "Based on [the] representations concerning the nature of Kennedy's relationship with Mrs.

---

[4]During the hearing, the Government added a sixth conflict, announcing that it intended to call Ms. Knock as a material witness at her husband's trial. *Id.*

Knock and the fact that Mrs. Knock will not consult Kennedy concerning her testimony...any potential conflict of interest can be waived by Defendant."

The Court therefore set the matter for a *Garcia* hearing "to determine whether Defendant chooses to waive any potential conflicts of interest." *Id*.  At that hearing, the Government "brought three additional facts to the attention of the Court and Defendant": (1) it had been contacted by separate counsel for Ms. Knock, (2) Mr. Kennedy had been served with a subpoena duces tecum, and (3) Buxton had been indicted.  Doc. 550.  The Court explained "each of the possible conflicts of interest" to Defendant and "advised him of the potential perils of each conflict." *Id*.  It "inquired whether Defendant desire[d] to consult another attorney or to speak further with Mr. Kennedy about the possible conflicts." *Id*.  In response, Defendant advised the Court the he did "not desire to consult another attorney or to speak further with Mr. Kennedy, and he...waived his Sixth Amendment right to conflict-free counsel." *Id*.  The Court concluded that the waiver was voluntary, knowing, and intelligent, and therefore, it allowed Mr. Kennedy to continue his representation of Defendant.  *Id*.

Trial finally commenced on May 2, 2000, against Knock and Madrid.  In opening statements, Mr. Kennedy, on behalf of Knock, conceded that Knock had indeed broken Canadian drug laws, but that he had very carefully structured his illegal activities so as not to violate United States drug laws, which were much harsher than Canadian laws.  Doc. 669 at 32-44.

On the fifth day of trial, the day opened with a discussion regarding a plea agreement between the co-defendant Madrid and Canadian authorities.  Madrid's attorney objected to its introduction because it contained "a prejudicial statement of facts that the government prepared and attached as an addendum to the plea agreement."  Doc. 878 at 6.  Kennedy objected on

Knock's behalf on hearsay grounds and also argued that introduction of the agreement deprived him of "any right of confrontation even if they attribute those statements to Mr. Madrid." *Id*. He also pointed out that the statements were "made post-conspiracy by Mr. Duboc and by other people who have already been arrested and therefore cannot be in furtherance of the conspiracy." *Id*. In response, the Government argued that as to Madrid, the plea agreement qualified as a statement of a party opponent. *Id*. at 7-8. As to Knock, the Government stated:

> [T]o the extent that Mr. Kennedy is arguing there are *Bruton* problems with it, definitely the whole plea agreement does not talk about John Knock.
> I think he's obligated under *Bruton* to identify specifically the portions that he objects to under *Bruton*, and then I should have the chance to redact that....so there are no *Bruton* references that are improper.

*Id*. at 8. Mr. Kennedy then requested additional time to "do a little research" but agreed that "in terms of the *Bruton* problems, [the Government] is absolutely right. He can begin by taking out the 40 or 50 references to John Knock. That is at least a start." *Id*. at 8-9.

Kennedy continued to press his arguments against admissibility of the plea agreement the following day. In that regard, he pointed out that the factual statement was not a statement by Madrid but instead "a conglomeration and synthesis of a tremendous amount of very prejudicial information." Doc. 879 at 72. He also argued that the statement of facts was "not made in furtherance of the conspiracy" but was a "narrative discussion of past events made by people who have already made deals." *Id*. He also argued that the probative value of the plea agreement was

limited "because there is very little...in here that hasn't already been attested to by other Mounties or by other witnesses here.  Whereas the prejudicial value is extremely great."  *Id.*

On the tenth day of trial, the Government offered the plea agreement with appendices into evidence as GX-135.  Doc. 883 at 8.  It had been "redacted to remove reference to Mr. Knock."  *Id.*  While Kennedy agreed that with the redaction, there were no further *Bruton* problems with the agreement, he did not "waive [the] fundamental objection to its admissibility." *Id.*  The Court then admitted the plea agreement, finding that the "redacted version cures *Bruton*."  *Id.* at 16.

While drafting jury instructions, the Court became concerned about "the legal soundness" of Knock's defense offered in opening statements.  Doc. 609.  In particular, the Court was concerned about Count I, because neither § 841 nor § 846 specified a "*locus delicti*," and it was considering giving an instruction to the effect "that, if the evidence shows beyond a reasonable doubt that Defendants conspired to possess marijuana with the intent to distribute, then the jury may find Defendants guilty–regardless of the location of the conspiracy."  *Id.*  The Court therefore sought the parties' input on this issue, as well as on the questions of venue and improper amendment of the Superseding Indictment.  *Id.*

During the course of trial, Ms. Knock was ordered to testify under a grant of immunity. Doc. 632; *see also* 18 U.S.C. § 6001, *et seq.* (immunity of witnesses).  The Government subpoenaed her, but she and her husband asserted various privileges to prevent compulsion of her testimony and the introduction of a letter from her to her husband, including the adverse spousal privilege, the marital communications privilege, and the attorney-client privilege.  Doc. 641.  The Court rejected Ms. Knock's invocation of both the spousal and marital privileges

based on the partner-in-crime exception, finding that the evidence showed that Ms. Knock

assisted her husband in "transmitting large sums of unaccounted money."   *Id*.  As to the letter,

which included a discussion "about the transmission of $2.5 million of unaccounted funds," the

Court found that the "partner-in-crime and crime-fraud exceptions abrogate the [marital

communications] privilege...."   *Id*.  It also rejected the Knocks' claim that the letter was covered

by the attorney-client privilege since Mr. Kennedy had merely acted as a courier in passing the

letter from Ms. Knock to Mr. Knock.  *Id*.  The Court also found that there was no Fourth

Amendment violation in the seizure of the letter by French authorities.  *Id*.  Finally, the Court

declined to grant a mistrial "because the letter refers to [Defendant's] trial counsel, attorney

Kennedy."  *Id*.  The Court found that both Knock and Kennedy "were on fair notice that this

letter might be admitted into evidence," since the letter had been presented in support of the

Government's motion to disqualify Kennedy, and thus, because Knock had knowingly waived

any potential conflict of interest, "he cannot raise it again now."  *Id*.

Over Defendants' objections, the jury was charged in part that "venue may exist in the

district where any co-conspirator is arrested or first brought," if it found that the charged

conspiracy and the overt acts of that conspiracy "occurred entirely or almost entirely outside of

territory of the United States...."  Doc. 642.  The Court later memorialized its reasoning with

respect to the giving of this instruction.  Doc. 667.  The Court also instructed the jury that the

defendants had raised a statute of limitations defense, and it instructed the jury that the

controlling statute of limitations was five years.  Doc. 642.  It then calculated the limitations period as to Knock from the date of the initial Indictment, March 10, 1994, extending back to March 19, 1989.  *Id*.

On May 30, 2000, the jury, after specifically finding venue properly lay in this District on all counts as to both Defendants, convicted Knock on Counts I, II, and III and Madrid only on Count I.  Docs. 644 & 646.  On the following day, the jury found that Knock had obtained $438 million and Madrid had obtained $8.8 million "from [their] illegal drug activity during and in furtherance of the conspiracy."  Doc. 655.

Before sentencing, Knock submitted a sentencing memorandum challenging the probation officer's recommendation of a life sentence, arguing that because the Superseding Indictment did not contain a drug quantity, under *Apprendi*, which had been decided less than a month after the jury's verdict, he could not be sentenced based on drug quantities that were not proven and found by the jury beyond a reasonable doubt.  Doc. 675.  He argued, instead, that his sentence should be 51-63 months.  *Id*.  Alternatively, he requested that the Court "require proof by a preponderance of the evidence of the drug and money quantities...."  *Id*.

In response, the Government pointed out that Knock "did not object to the court's jury instruction regarding the elements of the offense...or to the court's verdict form," and thus, he could not now raise the issue unless he made a showing of plain error.  Doc. 676.  The Government argued that the evidence "was overwhelming that the defendants were responsible for over 1,000 kilograms of marijuana," and thus, Knock could not show plain error.  *Id*.

Subsequently, the Court issued an Order directing the parties to answer a series of questions related to *Apprendi*, including, *inter alia*: (1) whether the Superseding Indictment was defective and if so whether the defect was jurisdictional, (2) whether the Court had the discretion to empanel a second jury solely to determine drug quantity, (3) whether the harmless error standard applied, and (4) whether the defendants waived any objections to the allegedly defective indictment.  Doc. 682.  Following briefing, the Court, relying on *United States v. Nealy*, 232 F.3d 825 (11th Cir. 2000), found no *Apprendi* error with regard to Count III and though there was error regarding the Court's failure to instruct the jury regarding drug quantities with regard to Counts I and II, the error was harmless since, based on the overwhelming evidence presented, "no reasonable jury could have rationally concluded that Defendants were guilty of the substantive offenses–conspiracy to possess with intent to distribute marijuana or conspiracy to import marijuana–without also concluding that the amount of marijuana possessed was more than 1000 kilograms."  Doc. 702.

Knock was subsequently sentenced to life imprisonment on Counts I and II and 20 years imprisonment on Count III, to run concurrently.  Docs. 707 & 709.  Knock appealed, and Kennedy continued to represent him.  *See* Docs. 742 & 935.

On appeal, Knock raised several errors.  He first complained that the Court erred in failing to disqualify Kennedy, "arguing that the district court erred in not specifically informing him that [Ms. Knock's] testimony and letter could prejudice him by implicating Kennedy in a crime."  Doc. 935.  The Eleventh Circuit rejected this claim, finding that the Court had "properly held that any conflicts of interest relating to Kennedy representing Knock were waivable" and that "there is a reasonable argument that the evidence before the court showed no actual conflict

to exist." *Id*.

Knock also argued that the Court "violated the adverse spousal testimony privilege by granting the government's motion to compel his wife to testify against him." *Id*. The court rejected this claim as well, finding that because the adverse spousal witness privilege belongs to the testifying spouse, not the accused spouse, Knock had no standing "to assert this privilege during his trial and thus does *not* have standing to assert the same in this appeal." *Id*. (emphasis in original). It also found that the Court did not err in denying the confidential marital communication because the privilege does not protect spousal communication about crimes in which they are joint participants. *Id*.

In his next claim of error, Knock maintained that the Court constructively amended the Superseding Indictment or, alternatively, that there was insufficient evidence to support the jury's verdict "that there was an overt act in furtherance of the conspiracy in the Northern District of Florida." *Id*. The court first found that the allegation that the conspiracy occurred in this District "and elsewhere" was sufficient, but it also concluded that the evidence supported a finding that an overt act occurred in this District, pointing to testimony that Nicholas Grenhagen, "an individual who worked for the charged drug organization" met with the DEA agent in Gainesville, Florida, and that several unindicted co-conspirators made phone calls to the agent in Gainesville as well. *Id*. Thus, there was no error. *Id*. *See also United States v. Grenhagen*, GCR 93-1043-MMP (N.D. Fla.); *United States v. Duboc*, 1:94cr1009-MMP (N.D. Fla.) at Doc. 349 (rejecting challenge to venue in original Indictment in this case, finding it to be triable issue of fact, and citing testimony from *Grenhagen* trial regarding series of meetings and correspondence between various members of conspiracy during which they discussed plans to

off-load, into United States, large quantity of marijuana with at least one of these meetings

taking place in Northern District of Florida).

Finally, Knock challenged his sentence on *Apprendi* grounds, which the court of appeals

rejected, holding:

> In view of the overwhelming record evidence of the massive drug conspiracy
> alleged in this case, no reasonable juror could have found the defendants guilty of
> conspiracy to possess with the intent to distribute marijuana from 1982 and 1996
> without finding the minimum 1,000 kilograms threshold to impose a life sentnece
> under 21 U.S.C. §§ 841(b)(1)(A)(vii), 846.

*Id*.

Knock did not appeal the introduction of Madrid's Canadian plea agreement.  However,

Madrid argued on appeal that "his Canadian attorney did not have authority to sign the plea

agreement if the facts alleged in Appendix A were intended to have been deemed admitted."  *Id*.

"The facts stated in Appendix A summarized the plea to the Canadian drug conspiracy and was

prepared by Canadian prosecutors relying upon reports gathered by Royal Canadian Mounted

Police Officers."  *Id*.  Furthermore, Madrid contended that the fact that Appendix A was the only

appendix he himself did not sign showed that it was not intended to be a part of the plea

agreement.  *Id*.  The Eleventh Circuit found that the Court did not abuse its discretion in

admitting the plea agreement.  *Id*.  It found that the evidence supported a finding that Appendix

A was an essential part of the plea agreement, including testimony from twenty-two Canadian

officers regarding the facts in Appendix A.  *Id*.  The court also found that if there was error in

admitting the agreement, it was harmless given the "overwhelming evidence presented in the

lengthy criminal trial against Madrid...." *Id*.

The instant motion to vacate followed.  On this occasion, Knock presents claims related

to (1) the introduction of Madrid's plea agreement, (2) the statute of limitations instructions, (3) the defense offered in opening statements, (4) the failure to challenge the money laundering count, (5) the failure to object to or request a limiting instruction regarding evidence of foreign drug imports, (6) the arguments presented regarding the admissibility of Ms. Knock's testimony, (7) Mr. Kennedy's conflict of interest, (8) *Booker* and whether Knock's decision to go to trial was knowing and voluntary, and (9) the validity of the forfeitures.  Docs. 961 & 962.  He also seeks permission to join two claims presented in Madrid's § 2255 motion, the first being a *Booker/Blakely/Apprendi* claim, and the second, an ineffective assistance of counsel claim related to the admission of the plea agreement.  Doc. 988.

Each claim will be presented in turn.

## DISCUSSION

1. Madrid's plea agreement.

Knock raises four issues related to the Madrid plea agreement.  First, he claims that trial counsel was ineffective for failing to object to its admission because it "constituted a guilty plea of a non-testifying co-defendant."  Doc. 962.  Second, he argues that appellate counsel was ineffective for failing to argue the inadmissibility of the agreement on the basis of plain error. *Id*.  Third, he maintains that appellate counsel was ineffective for failing to argue the inadmissibility of the agreement as violative of Knock's right of confrontation.  *Id*.  Finally, he claims that trial counsel was ineffective for failing to move to sever his trial from Madrid's in anticipation of the admission of the plea agreement.  *Id*.  Because all of these arguments raise the issue of counsel's effectiveness, a review of  *Strickland v. Washington*, 466 U.S. 668 (1984), is appropriate.

To prevail on a constitutional claim of ineffective assistance of counsel, a defendant must demonstrate (1) that his counsel's performance was below an objective and reasonable professional norm, and (2) that he was prejudiced by this inadequacy. *Strickland*, 466 U.S. at 686. The court may dispose of the claim if a defendant fails to carry his burden of proof on either the performance or the prejudice prong. *Id*. at 697. The court need not address the adequacy of counsel's performance when a defendant fails to make a sufficient showing of prejudice. *Id.; see also Tafero v. Wainright*, 796 F.2d 1314, 1319 (11th Cir. 1986).

With regard to the performance prong of *Strickland*, a defendant must provide factual support for his contentions that counsel's performance was constitutionally deficient. *Smith v. White*, 815 F.2d 1401, 1406-07 (11th Cir. 1987). The court must consider counsel's performance in light of all of the circumstances at that time and indulge in a strong presumption that counsel's conduct fell within the wide range of reasonably professional assistance. *Strickland*, 466 U.S. at 689-90. To show counsel's performance was unreasonable, a defendant must establish that "no competent counsel would have taken the action that his counsel did take." *Grayson v. Thompson*, 257 F.3d 1194, 1216 (11th Cir. 2001) (emphasis omitted). This standard is objective, and "it matters not whether the challenged actions of counsel were the product of a deliberate strategy or mere oversight." *Gordon v. United States*, 496 F.3d 1270, 1281 (11th Cir. 2007). "The relevant question is not what actually motivated counsel, but what reasonably could have motivated counsel." *Id*. When the court "can conceive of a reasonable motivation for counsel's actions," it can deny the claim of ineffectiveness without evidentiary hearing. *Id*. "An ambiguous or silent record is not sufficient to disprove the strong and continuing presumption...that [counsel] did what he should have done and that he exercised reasonable professional judgment." *Chandler v.*

*United States*, 218 F.3d 1305, 1314 n.15 (11th Cir. 2000) (en banc), *cert. denied*, 531 U.S. 1204 (2001).  "The relevant question is not whether counsel's choices were strategic, but whether they were reasonable." *Roe v. Flores-Ortega*, 528 U.S. 470, 481 (2000).  There are no "absolute rules" for determining whether counsel's actions were indeed reasonable, as "[a]bsolute rules would interfere with counsel's independence–which is also constitutionally protected–and would restrict the wide latitude counsel have in making tactical decisions." *Putnam v. Head*, 268 F.3d 1223, 1244 (11th Cir. 2001).  "To uphold a lawyer's strategy, [the Court] need not attempt to divine the layer's mental processes underlying the strategy." *Chandler*, 218 F.3d at 1315 n.16.  "No lawyer can be expected to have considered all of the ways [to provide effective assistance]." *Id*.  Quite importantly,

> If a defense lawyer pursued course A, it is immaterial that some other reasonable courses of defense (that the lawyer did not think of at all) existed and that the lawyer's pursuit of course A was not a deliberate choice between course A, course B, and so on.  The lawyer's strategy was course A.  And [the Court's] inquiry is limited to whether this strategy, that is, course A, might have been a reasonable one.

*Id*.

To show prejudice, a defendant must show more than simply that counsel's unreasonable conduct might have had "some conceivable effect on the outcome of the proceeding." *Strickland*, 466 U.S. at 693.  Instead, a defendant must show a "reasonable probability that, but for counsel's unprofessional errors, the result of the proceeding would have been different." *Id*. at 694.  A "reasonable probability is defined as a probability sufficient to undermine confidence in the outcome." *Id*.  Additionally, prejudice is established only with a showing that the result of the proceeding was fundamentally unfair or unreliable.  *Lockhart v. Hill*, 506 U.S. 364, 370 (1993).

Finally, the Eleventh Circuit has recognized that given the principles and presumptions set forth above, "the cases in which habeas petitioners can properly prevail...are few and far between." *Chandler*, 218 F.3d at 1313 (11th Cir. 2000). This is because the test is not what the best lawyers would have done or even what most good lawyers would have done, but rather whether a reasonable lawyer could have acted in the circumstances as defense counsel acted. *Williamson v. Moore*, 221 F.3d 1177, 1180 (11th Cir. 2000), *cert. denied*, 534 U.S. 903 (2001).

      A.      Failure of trial counsel to object to plea agreement as guilty plea of non-testifying co-defendant.

Knock argues that Kennedy rendered ineffective assistance because he failed to object to the admission of Madrid's Canadian plea agreement on the basis of its being the plea of a non-testifying co-defendant. In support of this argument, he cites cases which hold that it is generally reversible, plain error to admit the plea agreement of a non-testifying co-defendant or co-conspirator. *See United States v. Eason*, 920 F.2d 731 (11th Cir. 1990) (reference to non-testifying co-conspirator's conviction in separate but related case was highly prejudicial and violated tenet that "'guilt or innocence must be determined one defendant at a time without regard to the disposition of charges against others'"); *United States v. McLain*, 823 F.2d 1457 (11th Cir. 1987) (introduction of redacted plea agreements of non-testifying co-defendants in subject case was proper where counsel did not object to introduction and government used agreements only to show that co-defendants were not promised lighter sentences for testimony; however, introduction of unredacted plea agreement of testifying co-defendant in subject case was clear error as its probative value did not outweigh undue prejudice to defendant), *overruled on other grounds by United States v. Watson*, 866 F.2d 381 (11th Cir. 1989); *but see United*

*States v. De La Vega*, 913 F.2d 861 (11th Cir. 1990) (reference to non-testifying co-defendant's conviction in separate trial on indictment at issue, while improper, was not so prejudicial to defendant's interests as to require reversal).

In this case, the Court, over counsel's vociferous objections, admitted the redacted plea agreement of the non-testifying co-defendant to charges in another case and another country. Counsel's failure to object to the plea agreement on the ground advanced here does not win the day because even if he had argued as Defendant suggests in hindsight, there is not a reasonable probability that the Court would have changed its ruling and disallowed the introduction of the agreement. The agreement was carefully redacted to remove all references to the instant Defendant, and the Court instructed the jury that the plea agreement did not establish the guilt of either defendant in this case. Thus, having taken precautions to protect the interests of Defendant, the Court would not likely have entertained an argument pursuant to Fed. R. Evid. 403 if counsel had raised it, and consequently, Defendant suffered no prejudice in this regard.

B.      Failure of appellate counsel to argue inadmissibility of agreement as plain error.

While the Eleventh Circuit found the Court did not err in admitting the plea agreement as to Madrid, it did not consider the admissibility of the agreement with regard to instant Defendant Knock because appellate counsel did not base any part of his appeal on this issue. Again, the Court does not believe that the outcome of the appeal would have been different if counsel had raised this issue. Instead, the Court thinks the more likely outcome would have been that, in light of the Court's precautions in admitting the agreement and in instructing the jury and the overwhelming evidence of Knock's guilt, the Eleventh Circuit would have found the error, if any, to be harmless as to Knock also.

C.    Failure of appellate counsel to argue the inadmissibility of agreement as violative of right of confrontation.

Trial counsel preserved a Confrontation Clause argument, but the issue was not pursued on appeal.  According to Defendant, if counsel had pursued the issue on appeal, then he would have gained the benefit of the Supreme Court's ruling in *Crawford v. Washington*, 541 U.S. 36 (2004), which was decided only two weeks after certiorari was denied Defendant in this case.  In Defendant's view, if the issue had been raised on appeal, "either his petition for certiorari would have been held pending disposition of *Crawford*, or if not, he would have been within time to petition for rehearing under [Sup. Ct. R. 44], and therefore he would have been entitled to the benefit of the *Crawford* rule on his direct appeal."  Doc. 963.

This argument does not, however, really address the issue of whether *Crawford* would have been of any benefit to Defendant even if all the Supreme Court "if's" noted above had come to fruition, as Defendant's bald assertion that *Crawford* would have helped him is of no assistance to the Court and does not carry Defendant's burden to prove counsel's ineffectiveness. In any event, in this Court's view, there is nothing in *Crawford* which would have mandated the exclusion of the plea agreement.  It is questionable as to whether a plea agreement meets the criteria for a "testimonial statement," and furthermore, the agreement eliminated all references to instant Defendant, and thus, how would he have confronted any declarant with regard to the contents of the plea agreement without prejudicing himself?  *See also Richardson v. Marsh*, 481 U.S. 200 (1987) (non-testifying co-defendant's statement which was redacted to eliminate complaining defendant's name and any reference to his existence, accompanied by a limiting instruction, does not violate Confrontation Clause).

D.      Failure of trial counsel to move to sever trial in anticipation of admission of
         Madrid plea agreement.

There is not a reasonable probability that the Court would have severed the trials of

Defendant and Madrid even if he had requested severance since the agreement was redacted and

a limited instruction given to protect Defendant's interests and prevent any improper inference

on the jury's part.

2.      Statute of limitations.

A.      Erroneous instruction regarding applicable statute of limitations.

Defendant claims that the Court erred in instructing the jury that the pertinent starting

date for the statute of limitations was March 10, 1989, five years before the filing of the original

indictment on March 10, 1994.  According to him, because the superseding indictment

"substantially and materially expanded the scope of the indictment," the appropriate time frame

should have been calculated five years back from the date of the February 17, 1999, superseding

indictment, or February 17, 1994.

A superseding indictment brought after the expiration of the statute of limitations is valid

as long as (1) the original indictment was timely filed and is still pending, and (2) the

superseding indictment does not broaden or substantially amend the original charges.  *United

States v. Ratcliff*, 245 F.3d 1246 (11th Cir. 2001).  As noted, Knock claims that the superseding

indictment broadened or substantially amended the charges in the original indictment.  In this

regard, the "crucial inquiry is whether approximately the same facts were used as the basis of

both indictments."  *United States v. Italiano*, 894 F.2d 1280, 1285 (11th Cir. 1990).

As previously noted, the Superseding Indictment added Madrid as a defendant, clarified

the dates of the charges to "from a date unknown but at least by January 1, 1982, and continuing up to and including April 17, 1996," which was the date of Knock's arrest in Paris, and specified the overt acts in the money laundering count, Count III.  Doc. 414.  Plainly, these additions, which did not change the underlying facts, drug types or quantities, or the overt acts, did not broaden or substantially amend the charges, as the facts underlying both indictments remained the same.  In that situation, it is assumed that Defendant was placed on notice of the charges against him in the sense that he would be "called to account for certain activities and should prepare a defense."  *Italiano*, 894 F.2d at 1283.  Thus, the governing date for the commencement of the statute of limitations did not change with the filing of the superseding indictment, and the Court did not err in its instructions to the jury in that regard.

  B.  Failure of trial counsel to object to erroneous instruction.

  Because there was no error regarding the instruction, counsel was not ineffective in failing to object to the instruction.

C.      Failure of appellate counsel to object to erroneous instruction.

For the same reason, appellate counsel was not ineffective in failing to raise the issue on appeal.

3.      Concession of guilt regarding Canadian activities.

In this claim, Defendant charges that counsel acted ineffectively in telling the jury during opening statements that Defendant was guilty of drug crimes in Canada but not in the United States.  According to Defendant, this was not a reasonable strategic choice but resulted from a misunderstanding of the controlling law regarding the extraterritorial effect of §§ 841 and 846.

Counsel made a strategic choice to concede that his client had indeed violated Canadian drug laws, and the only question is whether that concession was reasonable.  The fact that it took the Court eight days to issue its order suggesting that the defense might not be legally sound and that the Government did not press for an instruction that this was not a defense to the charges in this case goes far to show that even reasonable jurists and attorneys were not convinced of the unsoundness of the defense.  Thus, it was not ineffective to test a defense that had not be specifically been rejected by the Eleventh Circuit, given the evidence of Defendant's extensive history in the drug trade.  Even if counsel should have anticipated the Court's sua sponte questions regarding the validity of the defense, Defendant was not prejudiced by counsel's actions.  The evidence of Defendant's guilt was absolutely overwhelming, and counsel was able seamlessly to adjust his defense after the Court's suggestion so that the defense espoused in opening statements meshed without harm to Defendant with the defenses of multiple

conspiracies, withdrawal from the conspiracies, and lack of venue summarized in closing arguments.  In short, this claim is without merit.

        4.        Money laundering.

        A.        Conviction for conduct not crime at time of commission.

In this claim, Defendant argues that because the money laundering statute, 18 U.S.C. § 1956(h), did not take effect until October, 1992, and he was charged with money laundering in Count Three from January, 1982, through April, 1996, he "may have been convicted based on conduct which was not criminal at the time it was committed," his sentence was "determined using pre-offense dollar amounts that could not properly be scored," and the "spill-over prejudice of this error in the indictment and presentation of the Government's case invalidates the convictions under all three counts in this close case."

The Government concedes that Defendant is correct regarding the effective date of § 1956(h) but denies that the claim has merit.

With regard to any claim that the conviction on Count III violated the Ex Post Facto Clause, it is without merit.  *See United States v. Hersh*, 297 F.3d 1233, 1244 (11th Cir. 2002) (Ex Post Facto Clause is not violated when defendant is charged with conspiracy that began before enactment of subject statute but continued after its effective date); *cf. United States v. Miranda*, 197 F.3d 1357, 1359 (11th Cir. 1999) (Ex Post Facto Clause is violated when defendant is charged with conspiracy that ended before effective date of statute).  Furthermore, regardless of the broad language used in the introduction to Count III, all of the overt acts alleged post-dated the effective date of § 1956(h), and thus, the jury could not have convicted Defendant on Count III without necessarily finding beyond a reasonable doubt the commission of the overt acts

alleged to have occurred in 1993.  Defendant's spill-over argument is also without merit, as it

overlooks the fact that the jury demonstrated its ability to compartmentalize and analyze the

evidence presented by deliberating for two days and by acquitting Madrid on two of the counts,

including Count III.  *Miranda*, 197 F.3d at 1359.   This claim is without merit.

       B.      Entitlement to resentencing.

This claim is equally without merit.  Even when the Court uses only the amount

laundered from fall, 1992, through fall, 1993, the total is $198,784,080 (75,297 kilograms of

hashish and marijuana x $2,640 per kilogram), well over the $10,000,000 threshold for the

imposition of the 9-point enhancement in ¶ 81 of the PSR.  *See also* Knock PSR at ¶ ¶17 & 26.

Thus, the Guidelines range would not have changed with a different calculation.

       C.      Failure of trial and appellate counsel to object to the money laundering count.

Because there was no error regarding the money laundering count, counsel were not

ineffective in failing to raise these issues either at trial or on appeal.

       5.      Failure of counsel to object to admission of evidence of foreign importations or to request limiting instruction.

During trial, the Government presented evidence not only of drug importations into the

United but also of importations into Australia, Canada, and Holland.  According to Defendant,

counsel should have objected to this evidence or, at the very least, have requested a limiting

instruction.  This claim is without merit, as the evidence of the foreign importations was useful

to the defense that there were multiple drug conspiracies involving various players and different

locales and time periods and that Defendant had withdrawn from the any conspiracy to import

drugs into the United States.  If counsel had objected to the evidence, he would have been

cutting off that line of defense completely, and in light of the overwhelming evidence of Defendant's guilt, no reasonable attorney would have wanted to cut off any conceivable manner of securing acquittal for his client. Even so, the evidence was admissible, at the very least, to "complete the story of the crime," *United States v. Ramsdale*, 61 F.3d 825, 829 (11th Cir. 1995), and counsel's objection to it would have been overruled.

6.      Spousal privilege arguments.

Defendant alleges that counsel misunderstood the law of spousal privilege, and this misunderstanding "undermined Knock's choice to waive the conflict of interest, undermined Knock's defense at trial, and undermined his appeal." According to him, counsel's misunderstanding of the law (Supreme Court precedent precluded Defendant from claiming the spousal privilege himself) "undermined the reasonableness of the strategy (a) to object to the Government's disqualification motion, (b) to object to the admission of the privileged testimony, and (c) to focus the direct appeal on this meritless issue."

Defendant was not prejudiced by pursuing the issue on appeal, even if he could not prevail on it, and thus, the claim as it relates to appellate counsel is patently meritless.

Counsel also did not act ineffectively in trying to keep Ms. Knock off the stand by claiming spousal privilege. What other ground did he have to prevent her testimony after the Government gave her immunity, and she unsuccessfully asserted the privilege herself? Her testimony was relevant, and though Kennedy's arguments were rejected and may have been doomed from their inception, he did not act deficiently in making the attempt.

A more delicate point, however, is raised by Defendant's claim that counsel's misunderstanding of spousal immunity affected Defendant's ability to make a knowing decision

regarding counsel's continued representation of him.  According to Defendant, counsel "labored under the mis-impression that Knock's spouse...could not be compelled to testify against Knock because of the spousal privilege" and that he "relied upon this misunderstanding...in his response to the government's efforts to disqualify him...."  This claim has no support in the record, and in fact, the Eleventh Circuit specifically found, that the record was "replete" with evidence that Defendant was made fully aware of all possible conflicts related to Kennedy's continued representation and that he waived all of these conflicts.  Indeed, the issue of spousal immunity was raised at the hearing by one of Defendant's counsel who indicated that if the Government called Ms. Knock to the stand, which it plainly intended to do, the issue of "marital privilege" would have to be considered.  Doc. 530 at 43.

       7.      Conflict of interest.

      A.      Counsel's criminal involvement in Knock's drug and money laundering activities.

     At the time the Government moved to disqualify Kennedy, it forthrightly advised Defendant that Kennedy was the subject of a grand jury investigation.  According to the United States Attorney for the District of New Jersey, who was investigating the matter:

> There are facts to suggest that Mr. Kennedy may have been involved in the international movement of money on behalf of some of the members of this organization and that he may have been involved in the transfers in order to disguise the nature and source of money the Government believes is the proceeds of illegal activity.  At the time, the Government and a federal grand jury are investigating whether or not Mr. Kennedy was a knowing participant on the laundering of funds.  At present, Mr. Kennedy is not a target of the investigation but is a subject of the inquiry.....The investigation is ongoing and not nearly complete due to the sophistication utilized by the participants as well as the fact that the money transfers the Government is investigating are international in scope requiring many requests pursuant to mutual legal assistance treaties.  I do not expect that it will be completed anytime soon.

Doc. 510, Attach. C.  The Government also put Defendant on notice that it intended to call Ms. Knock as a witness at trial and that the issue of Kennedy's attorney's fees might be raised.  Doc. 510, Attach. B; *see also* Doc. 530.  Defendant's suggestion that this "conflict–criminal involvement of the counsel with his client in the same charge as the client faces at trial–was not disclosed to this Court and to Knock, and was not the subject of a *Garcia* hearing, nor was it waived by Knock" is disingenuous and bears no further discussion in light of the record evidence.

B.      Lack of waiver regarding counsel's criminal involvement.

Defendant did in fact waive counsel's conflict "regardless of what the ongoing investigation is in the state of New Jersey," Doc. 827, and again, for him to suggest otherwise is plainly contradicted by the evidence.

C.      Prejudice to defense by counsel's "criminal conflict of interest."

Defendant points the Court to the arguments he made on appeal to show that he was prejudiced by counsel's continued representation of him when he labored under a "criminal conflict of interest."  On that occasion, he argued that when the issue of the source of his fees was raised, Kennedy "needed to take the stand to explain how he receive his fee or, at least, cross-examine Mrs. Knock about her lack of knowledge where the $1 million went."  He also claimed that Kennedy's representation was adversely affected because the implicit accusations regarding the amount of his fee and its source "undermined his credibility in the eyes of the jury." The Eleventh Circuit obviously did not find those arguments persuasive, and having considered them anew, the undersigned is likewise unpersuaded.  In essence, Defendant seeks relief for an alleged error which he invited, and the Court declines to find prejudice when he was

plainly advised that his attorney was being investigated for alleged money laundering and he

unhesitatingly waived the conflict.

        8.    *Booker*.

        A.    Decision to go to trial and not plead guilty was not knowingly made based on misadvice of counsel and Court regarding mandatory nature of Guidelines.

*United States v. Booker*, 543 U.S. 220, 244 (2005),  is not retroactively applicable to

cases on collateral review, as "*Booker*'s constitutional rule falls squarely under the category of

new rules of criminal procedure that do not apply retroactively to § 2255 cases on collateral

review."  *Varela v. United States*, 400 F.3d 864, 868 (11th Cir. 2005).  At the time of Defendant's

trial and sentencing, the Guidelines were mandatory, and counsel's advice in that regard would

have been correct.  Thus, there can be no deficient performance where the client is counseled in

accord with the existing law.  This claim should therefore be denied.

        B.    Resentencing under *Apprendi*.

    Defendant presented an *Apprendi* argument on appeal, which the Eleventh Circuit

rejected.  It will not be reconsidered here.  *United States v. Nyhuis*, 211 F.3d 1340, 1343 (11th

Cir. 2000), *cert. denied*, 531 U.S. 1131 (2001).

        9.    Forfeiture.

    In his supplement, Doc. 961, Defendant contests the forfeiture "if either counts one or

two are vacated."  Since neither count should be vacated, this claim is without merit.

10.     *Booker/Blakely/Apprendi* and ineffective assistance of counsel as presented by Madrid.

While the Court will allow Defendant to join the arguments presented by his co-defendant Madrid, they garner him no relief.

First, *Booker* is not retroactively applicable to cases on collateral review as set forth *supra*.

Second, Defendant's challenge to the introduction of the Madrid plea agreement on the ground that counsel failed to research Canadian law and criminal practice in British Columbia so as to ensure that the agreement, or at least Appendix A, would not be introduced is also not well taken.  Even if counsel was deficient in this regard, Defendant was not prejudiced by the introduction of the agreement.  Appendix A was redacted to remove all references to him, and the Court gave the proper limiting instruction regarding its use by the jury, and there is not a reasonable probability that the outcome of the trial would have been different if the agreement had not been introduced.

## **CONCLUSION**

As none of Defendant's claims have merit, the Court respectfully **RECOMMENDS**:

That the motion to vacate, Doc. 962, be **DENIED**;

That the supplement to grounds, Doc. 961, be **DENIED**;

That the motion for permission to join, Doc. 988, be **GRANTED**.

**IN CHAMBERS** at Gainesville, Florida, this  *22nd*  day of February, 2008.


*s/ A. KORNBLUM*
**ALLAN KORNBLUM**
**UNITED STATES MAGISTRATE JUDGE**

## NOTICE TO THE PARTIES

**A party may file specific, written objections to the proposed findings and recommendations within 15 days after being served with a copy of this report and recommendation.  A party may respond to another party's objections within 10 days after being served with a copy thereof.  Failure to file specific objections limits the scope of review of proposed factual findings and recommendations.**